[No. 8975–1–II.  Division Two.  March 7, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY MARVIN TAATJES, *Appellant*.

*Stephen J. Garvey,* for appellant (appointed counsel for appeal).

*Henry R. Dunn, Prosecuting Attorney,* and *Randolph Furman, Chief Deputy,* for respondent.

WORSWICK, C.J.—Larry Marvin Taatjes appeals an exceptional sentence following a jury trial and conviction for manufacturing a controlled substance. RCW 69.50-.401(a)(1). The presumptive standard range sentence was 6 to 12 months in prison. The Cowlitz County Superior Court sentenced Taatjes to 24 months. This appeal was argued pursuant to a motion for accelerated review. RAP 18.15. The commissioner referred the case to a panel of judges for decision by published opinion. RCW 9.94A.210(6).

A combined force of Kelso and Longview police officers and a Cowlitz County sheriff's detective raided a house in Longview with a warrant to search it for a secret drug laboratory. The house was occupied by one Sheryl Kelley and her daughter with the permission of the owner, who was away on a skiing trip. The owner was unaware of the presence of any controlled substances or drug manufacturing equipment in the house while he was away. The police entered the home, smelled a strong odor of phenyl–2–propanone (P–2–P), an organic chemical that is a necessary precursor ingredient of amphetamine and itself a controlled substance, and encountered in the basement a complete laboratory for making amphetamine. Among the laboratory equipment was a flask containing a gallon of P–2–P. Elsewhere in the house, the police found a small amount of methamphetamine, syringes, and other drug paraphernalia. They implicated Taatjes by finding his car keys next to the lab equipment, his fingerprints on the lab equipment and on a soft drink can nearby, and his car outside the house.

One of the officers identified a person who ran from the house during the raid as Taatjes.

This court summarized the pertinent standard of review in *State v. Hartley,* 41 Wn. App. 669, 670, 705 P.2d 821 (1985):

> The superior court may impose a sentence outside of the legislatively authorized standard range only if it finds, considering the purpose of the sentencing reform act, that substantial and compelling reasons justify an exceptional sentence. RCW 9.94A.120(2). When such a sentence is appealed, this court can reverse the sentence only if (a) the reasons given by the sentencing judge are not supported by the record, or (b) those reasons do not justify an exceptional sentence, or (c) the sentence imposed is clearly excessive or too lenient. RCW 9.94A-.210(4).

The trial court made the following findings of fact in support of its exceptional sentence:

> (1) That the facts of this case demonstrate that the defendant was engaged in a sophisticated drug enterprise employing substantial laboratory equipment excessive in size using substantial ingredients which he combined to manufacture a controlled substance.
>
> (2) That the defendant manufactured larger quantities of controlled substances than could possibly be used for personal consumption.
>
> (3) That the defendant occupied a major position and had a significant status in the drug distribution system as more than a mere user or dealer as the drugs he manufactured would be distributed to the public or drug wholesalers.
>
> (4) That the defendant has a prior history of drug violation and that rehabilitation did not occur as a result of that prior felony punishment.

Taatjes makes several challenges to the sufficiency of these reasons. As to findings 1 and 2, he contends that number 1 does nothing more than recite an element inherent in any charge of manufacturing a controlled substance, which is always a sophisticated undertaking; that there was no evidence of the lab's "substantial" or "excessive" size; and that the evidence failed to show production of large

quantities for use by others.

RCW 9.94A.390 gives an illustrative list of factors that the court may consider in deciding whether to impose an exceptional sentence. *See State v. Baker,* 40 Wn. App. 845, 700 P.2d 1198 (1985). Among the aggravating circumstances listed are that the offense is a major violation of the Uniform Controlled Substances Act, RCW 69.50. Thus, under RCW 9.94A.390, Aggravating Circumstances (4), an exceptional sentence may be imposed for a drug violation that is "more onerous than the typical offense of its statutory definition" because, for example, "(c) [t]he offense involved the manufacture of controlled substances for use by other parties; or . . . (f) [t]he offense involved a high degree of sophistication . . ." The evidence bears out the court's reliance on these factors.

It was obvious from the evidence, in the form of photographs, the laboratory items themselves, and testimony of an expert from the State Crime Lab, that Taatjes was implicated in the manufacture of a quantity of P–2–P much larger than would supply his own drug use. The police found two large flasks and a Mason jar whose combined contents were more than a gallon of P–2–P. As for the high degree of sophistication finding, we observe that at each applicable level of seriousness on the statutory sentencing grid, the standard range is the same for manufacturing any of a variety of controlled substances. RCW 9.94A.320(IV), (VI). In considering whether an offense is "more onerous than the typical offense of its statutory definition", obviously some drug manufacturing operations could be more sophisticated than this one. On the other hand, the police seized several pieces of laboratory apparatus, the expert said that manufacturing amphetamine by Taatjes's method would take a day or two of fairly attentive lab work, and it is reasonable to infer that the operation was more sophisticated than, say, growing opium poppies or coca leaves, which are controlled substances classified the same as P–2–P. *See* WAC 360–36–420, schedule II. The court had a basis for concluding that this operation was

more highly sophisticated than some others of the same degree of criminal seriousness might be.

Taatjes contends that the only evidence to support the court's finding that his operation used "substantial" equipment "excessive in size" was the expert's indication that equipment used in a school laboratory would be smaller; however, that testimony was more damning than Taatjes claims. The witness was asked on cross examination, "And these aren't particularly unusual apparatus, then, are they?"

> Answer: For a chemical laboratory, *they are in their size rather unusual, unless you're in a production laboratory.* School laboratory would not tend to have glassware on that order. They would stay right around 100 mls to 200 ml size containers.

(Italics ours.) Among the unusually large exhibits were two 4–liter containers, another flask capable of holding at least a gallon, a quart Mason jar, and two "separatory funnels," of a liter and a half liter in size. Thus, this evidence supports the remaining part of finding of fact 1.

As for the court's finding 3, that as a drug manufacturer Taatjes occupied a major position and had a significant status in the drug distribution system, it paraphrases another explicit statutory aggravating factor, RCW 9.94A-.390(4)(e). There, the Legislature has listed as an aggravating sentencing circumstance the fact that the accused is a "major" violator because, among other possibilities, he occupied a high position in the drug distribution hierarchy. Taatjes argues that the evidence failed to show that he occupied a higher position than would any other person convicted of manufacture. This argument misses the point. One can be guilty of manufacturing a controlled substance whether it is for personal use or for sale. *See* RCW 69.50-.401(a). If the drugs are made for sale, the Legislature has authorized greater punishment for those high in the distribution chain. The actual maker of the drug occupies a high position in the chain; perhaps only a drug overlord would be higher. The court was entitled to make finding 3 in view

of evidence that Taatjes was manufacturing the illegal substances for distribution to others.

Finally, Taatjes argues concerning finding 4, history of prior offenses and lack of rehabilitation, that it reflects a factor already taken into account in the standard range. He is correct. The standard range draws upon an offender score reflecting prior convictions, RCW 9.94A.330, and one's criminal history cannot alone support an exceptional sentence. *State v. Hartley, supra.* Moreover, when a person with a criminal history commits another crime, this demonstrates an absence of rehabilitation for one defendant as much as for another. The impropriety of this finding is not fatal to the sentence, however. It can and should be upheld on the basis of the court's other, valid reasons.

Taatjes does not argue that the sentence is "clearly excessive," as proscribed by RCW 9.94A.210(4)(b). We find no reason for holding that it is.

Affirmed.

REED and PETRICH, JJ., concur.

Review denied by Supreme Court May 6, 1986.